# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISON
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| Landmark Holdings of Florida, LLC, | Case No. 2:25-bk-00397 |
| | Jointly Administered With |
| Landmark Management Services of Florida, LLC, | Case No. 2:25-bk-00398 |
| Landmark Rehabilitation Hospital of Columbia, LLC, | Case No. 2:25-bk-00399 |
| Landmark Hospital of Athens, LLC, | Case No. 2:25-bk-00400 |
| Landmark Hospital of Cape Girardeau, LLC, | Case No. 2:25-bk-00401 |
| Landmark Hospital of Columbia, LLC, | Case No. 2:25-bk-00402 |
| Landmark Hospital of Joplin, LLC, | Case No. 2:25-bk-00403 |
| Landmark Hospital of Savannah, LLC, | Case No. 2:25-bk-00404 |
| Debtors.[1] | |

## DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) PAY CERTAIN PREPETITION WAGES, SALARIES EMPLOYEE BENEFITS, EXPENSES, AND OTHER COMPENSATION, (B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS, AND (C) CONTINUE TO PAY WORKFORCE OBLIGATIONS; AND (II) GRANTING RELATED RELIEF

Judge Delano will conduct the hearing on this motion by Zoom from Courtroom 6A, George C. Young Federal Courthouse, 400 W. Washington Street, Orlando, FL 32801, on **Thursday, March 13, 2025, at 10:30 a.m. Eastern Time**. Parties may attend the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Landmark Holdings of Florida, LLC (1217); Landmark Management Services of Florida, LLC (7031); Landmark Rehabilitation Hospital of Columbia, LLC (5424); Landmark Hospital of Athens, LLC (2745); Landmark Hospital of Cape Girardeau, LLC (1155); Landmark Hospital of Columbia, LLC (5424); Landmark Hospital of Joplin, LLC (9493); and, Landmark Hospital of Savannah, LLC (8003).

> hearing by video or telephone via Zoom. PARTIES MAY NOT APPEAR IN PERSON AT THE FORT MYERS COURTHOUSE. Parties are directed to consult Judge Delano's Procedures Governing Court Appearances regarding policies and procedures for attendance at hearings by video or telephone via Zoom, available at https://www.flmb.uscourts.gov/judges/delano. If you are unable to access the Court's website, please contact the Courtroom Deputy at 813-301-5195 no later than 3:00 p.m. one business day before the date of the hearing.

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by their undersigned proposed counsel, hereby move (the "Motion") the Court for entry of interim and final orders, substantially in the form order attached hereto as Exhibit A (the "Order"), pursuant to Sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), Local Rule 2081-1(g)(3), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):(i) authorizing, but not directing, the Debtors to pay the prepetition wages, salaries, and benefits, expenses, and other compensation of their workforce; (ii) authorizing, but not directing, the Debtors to continue employee benefit programs in the ordinary course of business; and (iii) authorizing and directing applicable financial institutions to honor and process related checks and transfers. In support of this Motion, Debtors submit as follows:

## I.   Relief Requested

1.     The Debtors' employees perform a variety of critical functions, including healthcare services, information technology, inventory management, administrative, legal, accounting, finance and management-related tasks. The skills and experience of the Debtors' employees, as well as their relationships with customers and vendors and knowledge of the Debtors' infrastructure, are essential to the Debtors' ongoing operations and ability to effectively operate their businesses during these chapter 11 cases.

2.     The Debtors' entered into a Corporate Professional Employer Organization ("CPEO") agreement (the "CPEO Agreement") with ADP TotalSource ("TotalSource") in

March 2024 to provide CPEO services, including, but not limited to, processing employment eligibility requirements and related paperwork, processing payroll, withholding and remitting payroll taxes, other employee deductions, and providing and managing employee benefits programs. All payments related to Employee (defined below) obligations, exclusive of payments to Affiliated Physicians, Independent Contractors, and Agency Workers (each as defined below), are remitted by the Debtors to TotalSource. The Debtors and TotalSource allocate employer responsibilities pursuant to the CPEO Agreement.

3.      To permit the Debtors to retain their current employees (the "Employees") during these chapter 11 cases, the Debtors request authority to pay and honor certain pre-petition claims and obligations, continue programs and maintain funding, in the exercise of their discretion, relating to, among other things: (i) Unpaid Employee Wages, Payroll Fees, and Payroll Taxes; (ii) Incentive Plans; (iii) Employee Benefit Programs; and (iv) the 401(k) Savings Plan (each as defined herein, and collectively, the "Employee Obligations").

4.      To enable the Debtors to carry out the relief requested, the Debtors also request that the Court authorize and direct financial institutions to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent the Debtors have sufficient funds standing to their credit with such bank, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and provide that all such financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.[2]

---

[2]  Concurrently herewith, the Debtors have filed a motion for authority to, among other things, continue utilizing their cash management system.

## II.    Jurisdiction, Venue and Predicates for Relief

4.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

5.    The bases for the relief requested herein are Bankruptcy Code sections 105(a), 363(b), 507(a)(4), and 507(a)(5), Local Rule 2081-1(g)(3), and Bankruptcy Rules 6003 and 6004.

## III.    Background

6.    On March 9, 2025 (the "Petition Date"), each of the Debtors filed with the Court their respective voluntary petitions for relief under chapter 11 the Bankruptcy Code, commencing the above-captioned chapter 11 cases.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7.    As of the date hereof, no trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

8.    The Debtors own and operate five long-term acute care ("LTAC") hospitals located in Missouri and Georgia.  Debtor Landmark Management Services of Florida, LLC provides management services to a sixth LTAC hospital located in Florida that is not owned by the Debtors.  Landmark's first hospital was opened in 2006.  The Debtors' hospitals provide critical care to patients that require a higher level of care for a longer period of time than a typical hospital can provide.

9.    The Debtors have filed these cases with the intention of continuing their operations in the ordinary course of business and seeking to reorganize their financial affairs.  Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Debtors' Chapter 11*

*Case Management Summary* (the "Case Management Summary"), which is incorporated herein by reference.  Additional facts in support of the specific relief sought herein are set forth below.

## IV.  Prepetition Workforce Obligations

### A.    Wages, Salaries and Other Compensation

10.    The Debtors' ability to serve their patients and maintain their business operations depends entirely on the support of their Workforce (as defined below).  As further described herein, much of the Debtors' workforce is comprised of skilled physicians, nurses, and other specialized medical personnel and staff.  These individuals are critical to providing exceptional patient care and maintaining compliance with state and federal regulatory requirements.  The Debtors cannot underscore enough how essential their workforce is to ongoing business operations.

11.    The majority of the Debtors' workforce provides services to the Debtors' various hospitals, and includes Employees, Affiliated Physicians, Independent Contractors, and Agency Workers (each as defined below and collectively, the "Workforce"), and totals more than 625 individuals.  The Workforce is comprised of, among others, physicians, nurses, pharmacists, and other administrative and support staff that serve critical functions at the Debtors' hospitals.  In the ordinary course of business, the Debtors pay wages, salaries, and other amounts, and provide certain benefits to, their Workforce in exchange for services for the benefit of the Debtors.

12.    As of the Petition Date, the Debtors employ approximately 625 people, including approximately 340 full-time employees and approximately 285 part-time employees (together, the "Employees").  Approximately 90 of the Debtors' employees are salaried, and approximately 535 are paid on an hourly basis.  For those Employees that are not based in a hospital, approximately 10 work at the Debtors' headquarters.

13.     The Debtors' Employees are paid bi-weekly.  The Debtors run payroll separately for each hospital.   The average gross monthly payroll for the Debtors' Employees is approximately $3.3 million.   The next scheduled payroll date for Landmark Management Services of Florida, LLC, Landmark Hospital of Athens, LLC, and Landmark Hospital of Joplin, LLC is March 14, 2025.  The next scheduled payroll date for Landmark Hospital of Savannah, LLC, Landmark Hospital of Cape Girardeau, LLC and Landmark Hospital of Columbia, LLC is March 21, 2025.

14.     In addition to Employees, in the ordinary course of hospital operations, the Debtors utilize approximately 14 independent physicians (the "Independent Physicians") and physicians who are members of approximately nine physician groups (the "Physician Groups", and together with the Independent Physicians, the "Affiliated Physicians").

15.     The Debtors further supplement their workforce by relying on approximately two individuals on a temporary or project basis (the "Independent Contractors") as well as 145 temporary agency workers staffed by active third-party staffing agencies (the "Agency Workers" and, together with the Independent Contractors, the "Supplemental Workforce").

16.     As set forth in greater detail below, the Debtors incur a number of obligations to, or on account of, their Workforce relating to compensation (the "Compensation Obligations"), and incur a number of obligations on account of certain benefit programs and policies (the "Benefits" and, together with the Compensation Obligations, the "Workforce Obligations").

      **B.      Wages, Salaries and Other Compensation**

17.     The estimated accrued and unpaid Compensation Obligations as of the Petition Date are summarized in the following chart, and described in further detail below:

| Category | Amounts Accrued and Unpaid |
|---|---:|
| Employee Wages | $1,100,000 |
| Affiliated Physicians | $532,000 |
| Independent Contractors | $375,000 |
| Employment Agencies | $2,700,000 |
| Total | $4,707,000 |

I.     Employee Wages

18.     The Debtors incur and pay obligations relating to Employees' salaries, wages, and other compensation, including paid time off and overtime ("Employee Wages") in the ordinary course of business.   On average, the Debtors pay approximately $3.3 million per month on account of Employee Wages.

19.     A substantial number of Employees are paid one week in arrears and, accordingly, such Employees are owed accrued but unpaid Employee Wages as of the Petition Date. Additional Employee Wages may also be due to certain Employees as a result of ordinary course reconciliation of Employee hours or overtime.   As of the Petition Date, the Debtors estimate that they owe approximately $1.1 million on account of accrued but unpaid Employee Wages.

20.     As a part of those Wages, the Debtors believe that two (2) Employees are owed in excess of the $15,150 cap for wages under section 507(a)(4) of the Bankruptcy Code.[3]

21.     Accordingly, the Debtors seek authority, but not direction, to pay any accrued and unpaid prepetition Employee Wages, and to continue honoring Employee Wages obligations on a postpetition basis, subject to the budget, in the ordinary course of business.

---

[3] The Debtors are not seeking approval to make payments in excess of the priority wage cap on an interim basis, but reserve the right to seek approval of payment of such amounts on a final basis, subject to the budget.

II.     Affiliated Physicians

22.     The Affiliated Physicians, including Independent Physicians, and Physician Groups work side-by-side with the Debtors' Employees to provide critical medical services to the Debtors' patients.

23.     The Debtors typically compensate Independent Physicians directly pursuant to services agreements between the Independent Physicians and the Debtors on an hourly, daily, weekly, or monthly basis (the "Independent Physicians Obligations").   The Debtors also typically compensate Physician Groups pursuant to services agreements between the Independent Physicians and the Debtors for services provided at the Debtors' hospitals by Group Physicians on an hourly, daily, weekly, or monthly basis (the "Group Physician Obligations" and, together with the Independent Physician Obligations, the "Direct Physician Obligations").

24.     In the twelve months prior to the Petition Date, the Debtors incurred an average of approximately $307,000 per month of Affiliated Physician Obligations.  As of the Petition Date, the Debtors estimate that they owe an aggregate of approximately $532,000 on account of the Affiliated Physician Obligations related to the Debtors' more than 23 Affiliated Physicians. Similar to the physician Employees, the compensation for these Affiliated Physicians reflects the highly-skilled and specialized nature of their services.  The Affiliated Physicians supplement the Debtors' physician Employees by providing the same services offered by the Debtors to additional patients.  Thus, the continued retention of the Affiliated Physicians is critical to the Debtors' operations; without their continued engagement, the Debtors would not be able to serve their existing patient population. Accordingly, the Debtors seek authority, but not direction, to pay any accrued but unpaid Affiliated Physician Obligations, and to continue honoring the Affiliated Physician Obligations on a postpetition basis, subject to the budget, in the ordinary course of business.

III.    <u>Independent Contractors</u>

25.    The Debtors engage Independent Contractors in the ordinary course of business to perform a range of services, including clinical, legal, financial, communications, accounting, and administrative functions. Independent Contractors are paid pursuant to invoices for their services, and rates for Independent Contractors vary based on, among other things, location and function.

26.    As of the Petition Date, the Debtors estimate that they owe approximately $375,000 of accrued but unpaid compensation to Independent Contractors (the "<u>Independent Contractor Obligations</u>").  Accordingly, the Debtors request authority, but not direction, to pay any accrued but unpaid Independent Contractor Obligations, and to continue honoring the Independent Contractor Obligations on a postpetition basis, subject to the budget, in the ordinary course of business.

IV.    <u>Employment Agencies</u>

27.    To further supplement the staffing of their facilities, the Debtors obtain the services of various skilled Agency Workers, which include nurses, ultrasound technicians, medical laboratory technicians, and other supplemental and temporary employees through a variety of staffing agencies (collectively, the "<u>Employment Agencies</u>").  These Agency Workers are critical for the Debtors to provide the appropriate level of care for their patients.  The Employment Agencies invoice the Debtors based upon the number of hours worked by the Agency Workers and, in turn, the Employment Agencies pay the Agency Workers' wages and other amounts to which the Agency Workers are entitled.  These Agency Workers serve critical and unique functions in the Debtors' operations.  On average, the Debtors incur approximately $664,000 in obligations each month to the active Employment Agencies (the "<u>Employment Agency Obligations</u>").  As of the Petition Date, the Debtors estimate that they owe an aggregate of approximately $2.7 million on account of Employment Agency Obligations to critical

Employment Agencies the Debtors continue to rely on.  If the Debtors fail to pay these amounts, the Employment Agencies may refuse to continue providing Agency Workers.

28.     The Debtors request authority, but not direction, to pay accrued but unpaid Employment Agency Obligations to those Employment Agencies providing Agency Workers to the Debtors and to continue honoring the Employment Agency Obligations on a postpetition basis, subject to a budget, in the ordinary course of business.

### C.    Payroll Service Providers

29.     The Debtors utilize ADP Workforce Now ("Workforce Now") for valuable human resources information systems to manage the Debtors' workforce and human resource-related functions, including timekeeping, payroll processing, and attendance tracking.  The Debtors' internal payroll department uses timekeeping, wage, and withholding information maintained on the Workforce Now system to calculate pay amounts, submit direct deposit transfer details to the banks, and complete payroll tax filings, among other things.  The Debtors incur administrative fees, among other costs owed to Workforce Now (the "Payroll Costs").

30.     Payroll Costs are collected concurrently with the Debtors' funding of Employee Wages and range between 1.61% and 6.45% of gross payroll.  The Payroll Costs percentage applied is based on gross payroll.  The Debtors typically pay between $1.61% and 2.25% for Payroll Fees for each payroll.

### D.    Employee Benefit Programs

31.     In addition to the wages and other compensation discussed above, the Debtors' Employees also generally are entitled to receive other forms of compensation, including health benefits, vacation pay, paid holidays, paid sick time and other earned time off, and reimbursement of certain business expenses (collectively, the "Employee Benefit Programs").

These forms of compensation are usual, customary and necessary if the Debtors are to retain their qualified Employees and preserve the value of their estates.

32.     <u>Health Benefit Plans</u>.     The Debtors, through TotalSource, offer eligible Employees the opportunity to participate in a variety of health benefit plans, including health, vision, dental plans, and long and short term disability and life insurance (collectively, the "<u>Health Benefit Plans</u>").

33.     The Debtors request authority, but not direction, to pay all outstanding prepetition amounts incurred on account of the Health Benefit Plans, and to continue honoring obligations related to the Health Benefit Plans on a postpetition basis, subject to a budget, in the ordinary course of business.

34.     <u>Paid Time Off</u>.     Employees are eligible to accrue paid time off ("<u>PTO</u>").     The Debtors seek authority to honor in the ordinary course of their business operations, the liabilities to their Employees that arose under their PTO policies or practices prior to the Petition Date. The Debtors anticipate that their Employees will utilize any accrued PTO in the ordinary course without resulting in any material cash flow requirements beyond the Debtors' normal payroll obligations.

35.     <u>Expense Reimbursement</u>.     Employees are entitled to reimbursement of certain limited categories of expenses, including expenses for travel, lodging, ground transportation, meals, cell phone costs, relocation expenses, supplies and other business expenses, (collectively, the "<u>Reimbursable Expenses</u>"), that are incurred in the ordinary course of their employment. The Debtors believe that certain Employees have not yet been reimbursed for Reimbursable Expenses incurred prior to the Petition Date.     The Employees submit receipts for reimbursement, which then are processed through the normal expense report and accounts payable process.     It is

difficult for the Debtors to estimate the amount of Reimbursable Expenses outstanding as of the Petition Date because not all Employees have submitted expense reports as of the Petition Date. It is critical that the Debtors be authorized to reimburse all such expenses as and when reports are submitted.

36.     The Debtors request authority, but not direction, to pay all outstanding Reimbursable Expenses, and to continue paying Reimbursable Expenses on a postpetition basis, subject to a budget, in the ordinary course of business.

37.     401(k) Plan.  The Debtors' Employees are eligible to participate in the 401(k) retirement savings plan maintained by the Debtors.  For eligible Employees, the Debtors' policy is to match 25% of each dollar deposited by Employees into the 401(k) savings plan up to 4% but not to exceed 1% of an Employee's salary, salary, up to the Internal Revenue Code limits. The Debtors pay these matching amounts with each payroll funding, and the amounts required to match are nominal, averaging a total of approximately $2,000 per payroll.

38.     The Debtors request authority, but not direction, to pay all outstanding Reimbursable Expenses, and to continue the 401(k) matching plan and to pay any amounts that otherwise may have arisen prepetition in the ordinary course of business.

**E.     Workers' Compensation Programs**

39.     The Debtors provide workers' compensation benefits to Employees, through TotalSource, and make payments monthly to TotalSource, which in turn makes payments to the appropriate state worker's compensation fund ("Workers Compensation Programs"). The Debtors seek authority to continue paying and/or contesting in good faith, as appropriate in the Debtors' business judgment, all amounts related to workers' compensation claims that arose prior to the Petition Date, including, without limitation, any payments required as a result of such

claims as they become due in the ordinary course of the Debtors' business ("Workers Compensation Obligations").

### F.  Direction to Banks

40.     Finally, the Debtors seek an order authorizing and directing all banks to receive, process, honor and pay any and all checks and transfers drawn on the Debtors' payroll and general disbursement accounts related to the Workforce Obligations described herein, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments and subject to the budget.

## V.  Basis for Relief Requested

### A.  Cause Exists to Authorize the Debtors to Pay Prepetition Wages and Benefits and Maintain Employee Benefit Programs

41.     Under section 507(a)(4)(A) of the Bankruptcy Code, claims of employees against a debtor for "wages, salaries, or commissions, including vacation, severance, and sick leave pay," that are "earned within 180 days before" the date on which a debtor's chapter 11 case is commenced are afforded priority unsecured status up to $15,150 per individual. 11 U.S.C. § 507(a)(4)(A). Similarly, under section 507(a)(5) of the Bankruptcy Code, employees' claims for contributions to certain employee benefits plans are also afforded priority unsecured status to the extent of $15,150 per employee covered by such plans, less any amount paid pursuant to section 507(a)(4) of the Bankruptcy Code. Id. at § 507(a)(5).

42.     The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides, in relevant part,

"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

43.     The Debtors believe that many of their Prepetition Wages and Benefits constitute priority claims under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  To the extent such Prepetition Wages and Benefits constitute priority claims, the Debtors are required to pay such claims in full to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B).  Thus, granting the relief sought herein would only cause such Employee claims to be paid in the initial stages of these chapter 11 cases, rather than at the plan confirmation stage.  Further, the amount by which any individual Employee claim exceeds $15,150 is insignificant in comparison to the value that such Employee will provide to these chapter 11 cases and the Debtors' ongoing businesses.

44.     The Debtors further submit that payment of the Prepetition Wages and Benefits, even where over $15,150 for certain Employees, maintaining the Employee Benefit Programs, and paying related administrative expenses is necessary and appropriate and is authorized under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" doctrine, which "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

45.     Specifically, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175.  "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the

continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177). Furthermore, Bankruptcy Rule 6003 permits the payment of prepetition obligations within the first 21 days of a case where doing so is "necessary to avoid immediate and irreparable harm."

46.     In a long line of well-established cases, courts have consistently permitted postpetition payment of certain prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See*, *e.g., Miltenberger v. Logansport Ry.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987), *appeal dismissed* 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses and benefits). Indeed, "a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *In re Structurlite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988).

47.     This "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re United Am., Inc.*, 327 B.R. 776, 782 (Bankr. E.D. Va. 2005) (acknowledging the doctrine of necessity "because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim"); *In re Boston & Me. Corp.,* 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). Several courts

apply the doctrine of necessity where payment of a prepetition claim (1) is "necessary for the successful reorganization of the debtor", (2) falls within "the sound business judgment of the debtor" and (3) will not "prejudice other unsecured creditors."  *United Am.*, 327 B.R. at 782; *see also In re Universal Fin., Inc.*, 493 B.R. 735, 739–40 (Bankr. M.D. N.C. 2013) (applying the *United American* three-part test); *In re Corner Home Care, Inc.*, 438 B.R. 122, 126 (Bankr. W.D. Ky. 2010) (same).  The doctrine is frequently invoked early in a chapter 11 case, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims.

48.    In addition, section 363(b)(1) of the Bankruptcy Code empowers the Court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A debtor's decisions to use, sell or lease assets outside the ordinary course of business must be based upon a sound business purpose.  *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales." (citing *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995))); *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "a good business reason").

49.    Indeed, courts in this and other districts have consistently and appropriately been loath to interfere with corporate decisions unless "that judgment is the product of bad faith, whim, or caprice." *In re Prime Motor Inns*, 124 B.R. 378, 379 (Bankr. S.D. Fla. 1991); *see also*

*Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) (applying the business judgment rule to a debtor's decision to reject an executory contract) ("unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion"); *see also Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed,* 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted).

50.     The Debtors submit that the requested relief represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm and is justified under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003. This is because any delay in paying the Prepetition Wages and Benefits or failure to maintain the Employee Benefit Programs and pay related administrative obligations will adversely impact the Debtors' relationships with their Employees and could irreparably impair Employees' morale, dedication, confidence and cooperation.  The Debtors' businesses hinge on their relationships with their customers, and the ability to provide superior services is vital.  The Employees' support for the Debtors' restructuring efforts in these chapter 11 cases is critical to the success of those efforts.  At this early stage, the Debtors simply cannot risk the substantial damage to their businesses that would inevitably attend any decline in their Employees' morale attributable to the Debtors' failure to pay the Prepetition Employee Obligations.

51.     Absent an order granting the relief requested, many Employees will undoubtedly suffer hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable certain of their Employees to meet their own personal financial obligations. Without the requested relief, the stability of the Debtors will be undermined, perhaps irreparably,

by the possibility that otherwise loyal Employees will seek other employment alternatives. Consequently, all of the Debtors' creditors will benefit if the requested relief is granted.

52.     Courts routinely have approved payment of employee prepetition claims for compensation, benefits and expense reimbursements similar to those described herein. *See*, *e.g.*, *In re Steward Health Care System LLC, et al.,* Case No. 24-90213 (CML)*; In re IBCS Mining, Inc.*, Case No. 14-61215 (KRH) (Bankr. W.D. Va. July 8, 2014); *In re James River Coal Co.*, No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 10, 2014); *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 14, 2012); *In re Robb & Stucky LLLP,* Case No. 8:ll-bk-02801-CAD (Bankr. M.D. Fla. Mar. 11, 2011); *In re Cargo Transp. Svcs., Inc.,* Case No. 1 l-bk-00432-MGW (Bankr. M.D. Fla. Jan. 20, 2011); *In re E-Brands Rests., LLC, etal..* Case No. 10-bk-18282-KRM (Bankr. M.D. Fla. Aug. 20, 2010); *In re CCI Liquidation, Inc., fka Custom Cable Indus., Inc.,* Case No. 10-bk-18478-MGW (Bankr. M.D. Fla. Aug. 9, 2010).

**B.      Applicable Banks Should be Authorized to Honor and Pay Checks Issued and Make Other Transfers to Pay the Prepetition Employee Obligations**

53.     The Debtors further request that the Court authorize all of the Debtors' banks to receive, process, honor and pay all prepetition and postpetition checks issued or to be issued, and fund transfers requested or to be requested, by the Debtors for the Prepetition Wages and Benefits.  The Debtors also seek authority to issue new postpetition checks, or effect new fund transfers, for the Prepetition Wages and Benefits to replace any prepetition checks or fund transfer requests that may be dishonored or rejected and to reimburse their Employees or the applicable payee, as the case may be, for any fees or costs incurred by them in connection with a dishonored or voided check or funds transfer.

54.     As a result of the commencement of the Debtors' chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Debtors' checks, wire transfers and

direct deposit transfers for the Prepetition Employee Obligations may be dishonored or rejected by the banks.

55.     The Debtors represent that each of these checks or transfers is or will be drawn on the Debtors' payroll and general disbursement accounts and can be readily identified as relating directly to payment of the Prepetition Wages and Benefits.  Accordingly, the Debtors believe that prepetition checks and transfers other than those for the Prepetition Wages and Benefits will not be honored inadvertently.

## VI.  <u>Necessity for Immediate Relief</u>

56.     Bankruptcy Rule 4001(c) provides that the "court may conduct a hearing before [14 days after service of the motion], but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ."  If the Debtors are not permitted to continue their ordinary business operations by continuing to pay and provide benefits to Employees, and to assure their Employees that authority has been granted to honor all such claims, immediate and irreparable harm will result.  Accordingly, the relief requested herein is consistent with Bankruptcy Rules 4001(c) and 6003.

## VII.  <u>Request for Waiver of Stay</u>

57.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

## VIII.  <u>Notice</u>

58.     The Debtors will serve notice of this Motion on (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) all known creditors holding secured claims against the Debtors' estates; (d) those creditors holding the 20 largest unsecured claims against the Debtors' estates on a consolidated basis; (e) all parties that have filed a request for service of filings pursuant to Bankruptcy Rule 2002; (f) Workforce Now; and (g) TotalSource.

## IX.  <u>No Previous Request</u>

59.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

60.     WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just and proper.

*[Remainder of page intentionally left blank]*

Fort Myers, Florida
Dated: March 12, 2025

Respectfully submitted,

/s/  *Jamie Z. Isani*
**HUNTON ANDREWS KURTH LLP**
Jamie Z. Isani (FL 728861)
333 SE 2nd Avenue, Suite 2400
Miami, Florida 33131
Telephone:    (305) 810-2500
Facsimile:    (305) 810-2460
Email:        jisani@hunton.com

- *and* -

Justin F. Paget (*pro hac vice* pending)
Jennifer E. Wuebker (*pro hac vice* pending)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:    (804) 788-8200
Facsimile:    (804) 788-8218
Email:        jpaget@hunton.com
              jwuebker@hunton.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISON**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| Landmark Holdings of Florida, LLC, | Case No. 2:25-bk-00397 |
| | Jointly Administered With |
| Landmark Management Services of Florida, LLC, | Case No. 2:25-bk-00398 |
| Landmark Rehabilitation Hospital of Columbia, LLC, | Case No. 2:25-bk-00399 |
| Landmark Hospital of Athens, LLC, | Case No. 2:25-bk-00400 |
| Landmark Hospital of Cape Girardeau, LLC, | Case No. 2:25-bk-00401 |
| Landmark Hospital of Columbia, LLC, | Case No. 2:25-bk-00402 |
| Landmark Hospital of Joplin, LLC, | Case No. 2:25-bk-00403 |
| Landmark Hospital of Savannah, LLC, | Case No. 2:25-bk-00404 |
| Debtors.[1] | |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY PREPETITION
WAGES, SALARIES AND BENEFITS; (II) AUTHORIZING DEBTORS TO
CONTINUE EMPLOYEE BENEFIT PROGRAMS IN THE ORDINARY
COURSE OF BUSINESS; (III) AUTHORIZING CURRENT AND FORMER
EMPLOYEES TO PROCEED WITH WORKERS COMPENSATION CLAIMS;
AND (IV) DIRECTING APPLICABLE FINANCIAL INSTITUTIONS TO
HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Landmark Holdings of Florida, LLC (1217); Landmark Management Services of Florida, LLC (7031); Landmark Rehabilitation Hospital of Columbia, LLC (5424); Landmark Hospital of Athens, LLC (2745); Landmark Hospital of Cape Girardeau, LLC (1155); Landmark Hospital of Columbia, LLC (5424); Landmark Hospital of Joplin, LLC (9493); and, Landmark Hospital of Savannah, LLC (8003).

THIS CASE came on for consideration upon the motion (the "Motion")[2] of the Debtors for entry of interim and final orders pursuant to Sections 105(a), 362(d), 363(b), 507(a)(4), 507(a)(5), and 541 of the Bankruptcy Code, Local Rule 2081-1(g)(3), and Bankruptcy Rules 6003 and 6004: (i) authorizing, but not directing, the Debtors to pay Prepetition Wages and Benefits; (ii) authorizing, but not directing, the Debtors to continue the Employee Benefit Programs in the ordinary course of business; (iii) permitting current and former employees to proceed with outstanding workers' compensation claims; and (iv) authorizing and directing applicable financial institutions to honor and process related checks and transfers; and the Court having jurisdiction to decide the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice of the Motion need be provided; and the Court having held a hearing to consider the relief requested in the Motion on March 13, 2025 (the "Hearing"); and upon the Chapter 11 Case Management Summary, the record of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion and granted herein is in the best interest of the Debtors, their respective estates and creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

**ORDERED**:

1.      The relief requested in the Motion is hereby GRANTED on an interim basis.

2.      The Debtors shall be, and hereby are, authorized, but not required, to pay or cause to be paid, in their sole discretion, all amounts required under or related to the Prepetition Wages and Benefits, *provided, however*, that the Debtors are not authorized to pay any amounts in excess of the priority wage cap in section 507(a)(4) of the Bankruptcy Code on an interim basis.

3.      The Debtors are authorized, but not required, to, in their sole discretion, continue to pay and honor their obligations arising under or related to the Employee Benefit Programs, as those Employee Benefit Programs were in effect as of the Petition Date and as such Employee Benefit Programs may be modified, terminated, amended or supplemented from time to time in the ordinary course of the Debtors' businesses.

4.      All applicable banks and other financial institutions are hereby authorized to receive, process, honor, and pay any and all checks, drafts, wires, check transfer requests or automated clearing house transfers evidencing amounts paid by the Debtors under this Order whether presented prior to or after the Petition Date to the extent the Debtors have good funds standing to their credit with such bank or other financial institution.  Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

5.      Nothing in the Motion or this Interim Order, nor any payments made pursuant to this Order, shall be deemed to be, or constitute, (a) an admission as to the validity or priority of any claim against the Debtors, (b) an assumption or postpetition reaffirmation of any agreement, plan, practice, program, policy, executory contract or unexpired lease pursuant to section 365 of

the Bankruptcy Code, (c) a grant of third-party beneficiary status or bestowal of any additional rights on any third party, or (d) a waiver of any rights, claims or defenses of the Debtors.

6.      Nothing in the Motion or this Interim Order shall impair the ability of the Debtors to contest the validity or amount of any payment made pursuant to this Interim Order.

7.      Nothing in the Motion or this Interim Order shall be construed as impairing the Debtors' right to contest the validity or amount of any Prepetition Wages and Benefits, including payroll taxes that may be due to any taxing authority.

8.      The notice procedures set forth in the Motion are good and sufficient notice and satisfy Bankruptcy Rules 4001, 9014 and 6004(a) by providing parties with notice and an opportunity to object and be heard at a hearing.

9.      The final hearing is scheduled on _____, 2025, at _____ (prevailing Eastern Time) before this Court (the "Final Hearing").

10.      Any objection to the relief requested in the Motion on a permanent basis must, by 4:00 p.m. (prevailing Eastern Time) on _____ (the "Objection Deadline"), be: (a) filed with the Court and (b) actually received by (i) the Office of the U.S. Trustee; (ii) proposed counsel to the Debtors, Hunton Andrews Kurth LLP, Riverfront Plaza, East Tower, 951 East Byrd Street, Richmond, Virginia 23219, Attn: Justin Paget, email: jpaget@hunton.com; (iv) counsel for Amerant, Garbett, Allen, Roza & Yates, P.C., Brickell Tower, 80 S.W. Eighth Street, Suite 3100, Miami, Florida 33130, Attn: David S. Garbett, Esq., Email: dgarbett@garlawfirm.com; and (v) the attorneys for any official committee of unsecured creditors, if then appointed in these cases, on or before the Objection Deadline.

11.     A reply to an Objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least two business days before the Final Hearing.

12.     The requirements of Bankruptcy Rule 6003 are satisfied.

13.     This Interim Order shall be effective immediately upon entry.

14.     The Debtors are authorized to take all action necessary to carry out this Interim Order.

15.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Debtors' counsel is directed to serve a copy of this Order on the parties which were provided notice pursuant to the Motion and file a proof of service within three days of entry of this Order.