**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| Landmark Holdings of Florida, LLC, | Case No. 2:25-bk-00397 |
| | Jointly Administered With |
| Landmark Management Services of Florida, LLC, | Case No. 2:25-bk-00398 |
| Landmark Rehabilitation Hospital of Columbia, LLC, | Case No. 2:25-bk-00399 |
| Landmark Hospital of Athens, LLC, | Case No. 2:25-bk-00400 |
| Landmark Hospital of Cape Girardeau, LLC, | Case No. 2:25-bk-00401 |
| Landmark Hospital of Columbia, LLC, | Case No. 2:25-bk-00402 |
| Landmark Hospital of Joplin, LLC, | Case No. 2:25-bk-00403 |
| Landmark Hospital of Savannah, LLC, | Case No. 2:25-bk-00404 |
| Debtors.[1] | |

**THE GEORGIA DEPARTMENT OF COMMUNITY HEALTH'S**
**AUCTION OBJECTION TO THE MANNER IN WHICH AUCTION WAS**
**CONDUCTED, SELECTION OF THE SUCCESSFUL BIDDER,**
**AND TERMS OF SALE**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Landmark Holdings of Florida, LLC (1217); Landmark Management Services of Florida, LLC (7031); Landmark Rehabilitation Hospital of Columbia, LLC (5424); Landmark Hospital of Athens, LLC (2745); Landmark Hospital of Cape Girardeau, LLC (1155); Landmark Hospital of Columbia, LLC (5424); Landmark Hospital of Joplin, LLC (9493); and, Landmark Hospital of Savannah, LLC (8003).

The Georgia Department of Community Health (the "GDCH"), by and through counsel, Christopher M. Carr, Attorney General for the State of Georgia, files its Auction Objection to the Manner in which Auction was Conducted, selection of the Successful Bidders, and Terms of Sale. In support thereof, the Georgia Department of Community Health shows as follows:

**BACKGROUND**

1.

On March 9, 2025, the above-captioned Debtors and Debtors-in-Possession (collectively, the "Debtor") filed a voluntary petition for relief (Doc 1) under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  An Order was entered on March 10, 2025 directing joint administration of the above-captioned cases, and designating Landmark Holdings of Florida, LLC as the lead case (the "Lead Case") (Doc 7).

2.

In 1965, Congress created the Medicaid Program through amendments to the Social Security Act.  *Pharmaceutical Researchers & Mfrs. Of Am. V. Walsh, 538 U.S. 644, 650 (2003).* A state's participation in the Medicaid Program is voluntary; however, if a state elects to join the Program, it must administer a state Medicaid plan that meets federal requirements.  *See Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 433.*  The Medicaid Program provides subsidies to participating states to furnish medical assistance to "families with dependent children and of aged, blind, or disabled individuals, whose income and recourses are insufficient to meet the costs of necessary medical services."  42 U.S.C. 1396-1.  Georgia participates in the general Medicaid program and the Georgia Department of Community Health, (hereinafter, "GDCH"), is the state agency for Georgia charged with the administration of Georgia's State Plan for Medical Assistance (the "Medicaid Program") in accordance with the requirements of Title XIX of the Social Security Act

of 1935, as amended, and in accordance with the Georgia Public Assistance Act of 1965, O.C.G.A. § 49-4-1 *et seq.*.. GDCH serves as the leading state agency in Georgia for Medicaid and oversees healthcare facility regulation, including skilled nursing facilities. GDCH is authorized to establish such rules and regulations as may be necessary or desirable to execute the State Plan and to enter into such reciprocal and cooperative arrangements with other states, persons, and institutions, public and private, as it may deem necessary or desirable in order to execute the State Plan. *Ga. Comp. R. & Regs. R. 350-1-.02 (2016).*

3.

The Debtor *et al.*, a Medicaid Provider, and GDCH entered into a Statement of Participation for each skilled nursing facility the provider owned and/or operated located in Georgia. The Statement of Participation is renewed annually, and together with GDCH's Policies and Procedures, regulatory manuals, all enrollment documents, and any amendments thereto, constitute the entire agreement between the Parties, (the "Provider Agreement").

4.

The Debtors operate certain skilled nursing facilities in the State of Georgia that are subject to nursing home provider fees (hereinafter, "Bed Taxes") that are owed to GDCH, pursuant to *O.C.G.A. § 31-8-164* and *Ga. Comp. R. & Regs. R. 350-7-.02 (2026)*. Bed Taxes are paid quarterly by each facility to GDCH. Bed Taxes are self-reported by each facility. A facility shall calculate and report the provider fee due upon a form provided by GDCH and submit therewith payment of the provider fee no later than the thirtieth day following the end of each calendar quarter. Payment of Bed Taxes owed to GDCH is secured by the Cash Collateral, which under applicable law may be offset against accounts receivable owed to the Debtors. 42 U.S.C. § 1395g(a). 42 C.F.R. § 413.64. GDCH has a lien on the Debtor's property, the Debtor's accounts receivable, the Debtor's

sales proceeds, and upon the successor's property and upon the successor's accounts receivable. O.C.G.A. § 31-8-165(e).   Part I of the Georgia Medicaid Manual, § 105.9.   GDCH seeks replacement liens on the Debtors receivables and upon the receivables of the successor.

5.

The list of creditors who have the 40 largest unsecured claims and are not insiders lists GDCH as the fourth largest creditor in the case with claims totaling $1,197,933.00.  Amounts due to GDCH are for delinquent provider fees (hereinafter, "Bed Taxes"), that came due prepetition on a quarterly basis pursuant to O.C.G.A. § 31-8-164. As of the Petition Date, Debtor Landmark Hospital of Athens (the "Athens Hospital") owes GDCH $968,861.91 as asserted on its Claim No. 31 filed in the individual Athens Hospital case and Claim No. 65 filed in the Lead Case.  Landmark Hospital of Savannah (the "Savannah Hospital") owes GDCH $880,961.67 as of the Petition Date as asserted in its Claim No. 40 filed in the individual Savannah Hospital case and Claim No. 66 filed in the Lead Case.  GDCH seeks allowance of these pre-petition priority claims in the amounts asserted. *In re Boston Regional Center, Inc.*, 365 F.3d 51 (1st Cir. 2004).

**OBJECTIONS**

6.

GDCH reserves the right to supplement its Objection to any transaction based on failure of the Debtor to timely file its ongoing quarterly Bed Tax Reports that come due, as set forth in O.C.G.A. § 31-8-164, and to simultaneously make the associated Bed Tax payments as required by O.C.G.A. § 31-8-164, 11 U.S.C. 507(a)(1), and 11 U.S.C. 1112(b)(4)(I).

7.

Pursuant to the Notice of Successful Bidders, the Debtor proposes to sell substantially all of its assets free and clear of liens to prospective bidders who have obviously been led to believe

they would assume only "certain liabilities" the Debtors owe GDCH.  In so doing, the Debtors' sales do not comply with any of the elements of 11 U.S.C. §363(f).  Specifically, (1) the proposed sale of property free and clear of liens is not permitted in applicable non-bankruptcy law; (2) GDCH does not consent to these sales; (3) there is no indication any particular value for any particular asset being sold to ensure that assets are sold at a price that is greater than the aggregate value of all liens on the property; (4) GDCH's interest is not in bona fide dispute; and (5) GDCH cannot be compelled to accept money satisfaction of zero or less than its liens, as the Debtors propose.

8.

GDCH objects to selections of the successful bidders to the extent that any of them have any connection whatsoever, individually or through any business interests whatsoever in any assets the Debtor proposes to sell as indicated in its Notice of Successful Bidders ( the "Notice") (Doc. 340).

9.

The proposed assumption of "certain liabilities" owed to GDCH is so vague as to constitute deny proper disclosure of the terms of these transactions.

10.

The terms set forth in the Notice fails to set forth GDCH's interests, including, but not limited to, Provider Agreements without the burdens of curing the pre-petition and post-petition defaults.  *In re Vitalsigns Homecare, Inc.,* 396 B.R. 232 (D.Ma. Oct. 29, 2008). Further, the Debtor's Notice fails to set forth the Bed Taxes necessary to cure the defaults and fails to account for Medicaid overpayments and penalties.

9.

The Notice and terms of sale set forth therein fails to comply with Part I of the Georgia Medicaid Manual, § 105.9 entitled *Change of Ownership or Legal Status,* which provides as follows:

"The successor provider must submit a new enrollment application and supporting documentation to become effective at the time of the change of ownership. A change of ownership includes, but is not limited to, a dissolution, incorporation, re-incorporation, reorganization, change of ownership of assets, merger, or joint venture whereby the provider either becomes a different legal entity or is replaced in the program by another provider.

Any person or entity that is a Medicaid/PeachCare for Kids provider, and any person or entity that replaces a provider, shall be deemed to have accepted joint and several liability, along with its predecessor, for any overpayment and/or provider fee [bed tax] sought to be recovered by the Division after the effective date of the successor provider's enrollment, regardless of the successor's enrollment status or lack of affiliation with its predecessor at the time the overpayment was made. An entity shall be deemed to have replaced a provider if it (1) effectively became a different legal entity through incorporation, reincorporation, merger, joint venture, dissolution, creation of a partnership, or reorganization, (2) took over more than fifty percent (50%) of the predecessor's assets, Medicaid/PeachCare for Kids clients, or Medicaid/PeachCare for Kids billings, or (3) has substituted for the predecessor in the program, as evidenced by all attendant circumstances. Reimbursement for services rendered prior to the effective date of enrollment of a successor provider (including any adjustments for underpayments made by the Division) shall be made to the provider of record at the time the payment is made or to that provider's payee as properly designated on the appropriate form(s) required by the Division. Any dispute or conflict, legal or otherwise, arising between the currently enrolled provider and the predecessor provider concerning either apportionment of liability for any overpayment previously made by the Division or the right to additional reimbursement for any underpayments previously made by the Division shall be the sole responsibility of such parties and shall not include the Division. The new owner applying for enrollment may not request a change of predecessor's provider number without the express consent of the Chief of the Division of Medical Assistance.

To allow for continuity of care and timely filing of claims, the successor shall submit claims using the predecessor's provider number while the Change of Ownership enrollment application is being processed..."

10.

The Notice also fails to properly provide for any and all current and future Medicaid overpayments, penalties, and Bed Taxes.  The Sale Motion appears to be improperly cutting off any and all successor liability.  *In re Vitalsigns Homecare, Inc.,* 396 B.R. 232 (D.Ma. Oct. 29, 2008).  The Court does not have authority to cut off successor liability over the current Provider Agreements.  The Court does not have jurisdiction over any new Provider Agreement pursuant to Georgia state law despite the Notice's attempt to cut off successor liability to the Purchaser.  Further, failure of the Debtor or Purchaser to pay the defaults of the Debtor may adversely affect GDCH's ability to secure federal matching funds available through Georgia's Medicaid Plan.

11.

The Notice fails to comply with 28 U.S.C. §959(b).  Under Section 959(b) of Title 28 of the United States Code, a Trustee is required to comply with state laws in which each specific property of the Debtor is located. Case law sets forth at least three principles that have been ascribed to Section 959(b): (1) the enactment of Section 959 provides evidence that Congress did not intend for the Code to pre-empt all state laws, (2) Congress intended to prevent Trustees from insulating themselves by using the federal courts to circumvent compliance with state laws, and (3) an ongoing bankrupt business (and therefore the Trustee) should not receive unfair competitive advantages merely because it seeks to reorganize itself under the Code. *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.,* 474 U.S. 494 (1986).  *Ky. Emples. Ret. Sys. v. Seven Cntys. Servs.,* 2016 U.S. Dist Lexis. 43390 (W.D.Ky. March 31, 2016).  *In re Old Carco, LLC.,* 406 B.R. 180 (S.D.Ny. June 19, 2009).

12.

Failure to fund GDCH's priority and administrative claims in full prior to any sale to the stated successful bidders cause for denial of the information proposed in the Notice and dismissal or conversion of the case, pursuant to 11 U.S.C. § 1112(b), and is grounds for termination of the Debtors' Agreements, and any corresponding Provider Numbers.

13.

GDCH objects to the terms of any sale without acknowledgement of its rights and remedies, and clear provisions for GDCH's liens attaching in proceeds of sale and its first priority position for receipt of said proceeds.  Failure of the Debtor and/or successor to pay any and all current and future Medicaid overpayments, penalties, and Bed Taxes places all other SNFs in Georgia at a competitive disadvantage as they must comply with all State and Federal Medicaid Rules, Regulations, and Laws.  Further, approval of the Sale Motion in violation of multiple State and Federal Medicaid Rules, Regulations, and Laws erodes the Medicaid Program created by Congress.   GDCH, CMS, and HHS are charged with protecting the interests of the Medicaid Program, including the effective management of funds entrusted to the Medicaid Program.  *In re Vitalsigns Homecare, Inc.,* 396 B.R. 232 (D.Ma. Oct. 29, 2008).

WHEREFORE, the Georgia Department of Community Health, ("GDCH"), respectfully requests this Court to enter an order that denies the Sale Motion, denies the Motion until it is consistent with the foregoing, allows GDCH to terminate the Provider Agreements and the Statements of Participation immediately, directs the Debtor to irrevocably notify GDCH of its proposed disposition of the Provider Agreement immediately, orders the Debtor immediately provide for payment of all Bed Taxes owed to GDCH thru closing of the sale, provides for payment of any and all Medicaid overpayments and penalties, and that grants GDCH such other and further relief as the Court deems just and proper.

This 5th day of September, 2025.

Respectfully Submitted,


/s/ Shawna Y. Staton
 SHAWNA Y. STATON
Georgia Bar No. 640220
Assistant Attorney General
Email: sstaton@law.ga.gov
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (470) 470-7621
Fax: (943) 200-4291
(Admitted Pro Hac Vice)
***Counsel for Georgia Department of Community Health***


/s/ Jessica Schwieterman
Jessica Schwieterman
Senior Assistant Attorney General
Florida Bar No. 116460
Civil Litigation Central
Office of the Attorney General
3507 E. Frontage Road, Suite 200   Tampa,
FL 33607
Office: (813)233-2880 / Direct: (813)577-4564
E-mail: Jessica.Schwieterman@myfloridalegal.com
***Local Counsel for Georgia Department of Community Health***

### CERTIFICATE OF SERVICE

I hereby certify that I have this day caused copies of the foregoing pleading to be served upon all parties registered to receive CM/ECF notices in this case.

/s/ Jessica Schwieterman
Jessica Schwieterman
Senior Assistant Attorney General
Florida Bar No. 116460